IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**STANLEY HASTINGS, JR.**                                                                                         **PLAINTIFF**

v.                                    **Case No. 4:22-cv-00228-LPR**

**SMARTMATCH INSURANCE AGENCY, LLC**                                                **DEFENDANT**

**ORDER**

Plaintiff Stanley Hastings, Jr. sued Defendant SmartMatch Insurance Agency, LLC for alleged violations of the Telephone Consumer Protection Act of 1991 (TCPA).[1] SmartMatch filed a Counterclaim for common-law fraud under Arkansas state law.[2] Pending before the Court is Mr. Hastings's Motion to Dismiss SmartMatch's Counterclaim.[3] Mr. Hastings argues that SmartMatch's Counterclaim alleges insufficient facts to state a viable cause of action, especially in light of Federal Rule of Civil Procedure 9(b)'s particularity requirement.[4]

For the reasons discussed below, the Court GRANTS in part and DENIES in part Mr. Hastings's Motion to Dismiss. The Court has identified various deficiencies with SmartMatch's pleading. But SmartMatch may be able to remedy most of these deficiencies through amendment and eventually state a viable claim. Pursuant to Rule 15, the Court gives SmartMatch leave to amend its Counterclaim within twenty-one days of the date of this Order.

---

[1] Pl.'s Compl. (Doc. 1) ¶ 2. On August 15, 2022, the Court held a motion to dismiss hearing. Among other things, the hearing revealed that SmartMatch was uncertain about the identity of the Plaintiff (and, therefore, the Counter-Defendant). Aug. 15, 2022 Hr'g Tr. (Rough) at 26. Ultimately, it became clear that the Plaintiff (and Counter-Defendant) is Stanley Hastings, Jr., the son of the person that SmartMatch initially assumed was the Plaintiff. *Id.* at 35–36. The Court directs the Clerk to amend the caption to identify the Plaintiff as Stanley Hastings, Jr.

[2] Def.'s Counterclaim (Doc. 5) ¶¶ 30–44. This Court has supplemental jurisdiction over SmartMatch's Counterclaim under 28 U.S.C. § 1367. The claim is "part of the same case or controversy" as the original action. *Id.* § 1367(a). Additionally, because there is complete diversity of citizenship among the parties and SmartMatch alleges that the amount in controversy exceeds $75,000, this Court likely has diversity jurisdiction pursuant to *Id.* § 1332.

[3] Pl.'s Mot. to Dismiss (Doc. 8).

[4] *Id.* at 1.

## BACKGROUND[5]

Mr. Hastings is a resident of Little Rock, Arkansas.[6] SmartMatch is a limited liability company located in Kansas City, Missouri.[7] On December 3, 2019, Mr. Hastings or his agent visited a third-party website that allows consumers seeking health insurance quotes to enter their personal information.[8] On this website, Mr. Hastings or his agent entered Mr. Hastings's phone number (and an address belonging to his dad's former business) under the false name "Marvin Taeese."[9] Mr. Hastings or his agent then "clicked 'submit' and [thereby] consented to receive prerecorded calls regarding health insurance quotes."[10]

In reliance on this fraudulent information and consent, an unidentified company—not the owner of the website and not SmartMatch—called Mr. Hastings on March 27, 2021, requesting to speak with "Marvin."[11] It is not clear from the Counterclaim whether the unidentified company had any relationship with SmartMatch.[12] In any event, Mr. Hastings did not indicate at any point

---

[5] On a 12(b)(6) motion to dismiss, the Court accepts as true the factual allegations in a complaint (or, in this case, a counterclaim) and draws all reasonable inferences in favor of the nonmoving party. *See Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020). Accordingly, the Court's factual recitation relies solely on the (non-conclusory) allegations set forth in SmartMatch's Counterclaim.

[6] Def.'s Counterclaim (Doc. 5) ¶ 2; *see also* Pl.'s Compl. (Doc. 1) ¶ 5.

[7] Def.'s Counterclaim (Doc. 5) ¶ 1.

[8] *Id.* ¶¶ 12–13. The IP address associated with the form is consistent with Mr. Hastings's location in Little Rock. *Id.* ¶ 20. Of course, all this really means is that the IP address appears to be from the Little Rock area.

[9] *Id.* ¶¶ 8–9, 14, 16–17. "Plaintiff, or his agent, has previously entered the false name 'Marvin Taeese' on other websites to encourage companies to call Plaintiff regarding products and services." *Id.* ¶ 27. With respect to the address submitted, it should be noted that the Counterclaim attributes the address to a former business owned by Mr. Hastings himself. But that is because, as explained in footnote 1 above, the Counterclaim confused Stanley Hastings, Jr. with his dad, Stanley Hastings.

[10] Def.'s Counterclaim (Doc. 5) ¶ 15.

[11] *Id.* ¶ 21.

[12] *Id.* ¶¶ 21, 24, 38–39. The lack of clarity appears to have been intentional. At the motion to dismiss hearing, counsel for SmartMatch acknowledged that he did not know exactly which company called Mr. Hastings or how many times the call was transferred to a new company before the call reached SmartMatch. Aug. 15, 2022 Hr'g Tr. (Rough) at 17–21. In addition to fixing the other deficiencies identified in this Order, the Amended Counterclaim should more clearly allege the chain of calls and transfers that occurred on March 27, 2021. This includes (but is not limited to) the names of the entities that were involved in the calls and transfers.

during any call with any third party that his name was, in fact, Stanley Hastings, Jr.[13] Nor did Mr. Hastings indicate that his phone number was on the National Do Not Call Registry, that he wanted the call to end, or that he did not want to receive such calls again in the future.[14] On the contrary, Mr. Hastings at least implied that his name was Marvin Taeese and that he was interested in speaking to someone about health insurance quotes.[15] The call was eventually transferred to a SmartMatch agent.[16] SmartMatch purchased this customer lead because Mr. Hastings "feigned interest in health insurance quotes."[17]

On March 11, 2022, Mr. Hastings filed a class action Complaint against SmartMatch, stating that his phone number had been filed with the National Do Not Call Registry since 2005 and that a "spoofed" number had called him "approximately a dozen" times in violation of the TCPA.[18] In turn, SmartMatch brought a Counterclaim alleging the facts set forth above and asserting that its agent spoke with Mr. Hastings in reliance upon fraudulent information that he or his agent submitted as "Marvin Taeese" to a third-party website and fraudulent information that he provided to third-party callers.[19] Mr. Hastings's pending Motion to Dismiss the Counterclaim has two related arguments: that SmartMatch's Counterclaim fails to sufficiently allege the elements of common-law fraud under Arkansas law and that SmartMatch's Counterclaim fails to assert the specific circumstances of the alleged fraud, as required by Rule 9.[20]

---

[13] Def.'s Counterclaim (Doc. 5) ¶ 22.

[14] *Id.* ¶¶ 21–23.

[15] *Id.* ¶¶ 22–23; *see also* Pl.'s Compl. (Doc. 1) ¶¶ 26–30.

[16] Def.'s Counterclaim (Doc. 5) ¶¶ 24–25, 41–42.  As explained in footnote 12, the exact chain of calls and transfers is not clear.

[17] Def.'s Counterclaim (Doc. 5) ¶ 39.

[18] Pl.'s Compl. (Doc. 1) ¶¶ 19–22.

[19] *See generally* Def.'s Counterclaim (Doc. 5).

[20] *See generally* Pl.'s Mot. to Dismiss (Doc. 8).

**DISCUSSION**

Under Arkansas common law, fraud has five elements: "(1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance."[21] The essence of Mr. Hastings's argument is that SmartMatch fails to sufficiently allege any of these elements.

When evaluating a Rule 12(b)(6) motion, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff."[22] A complaint based on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" should be dismissed.[23] As a general matter, it does not take much to survive this stage. In most circumstances, to survive a motion to dismiss, a plaintiff must only plead factual allegations that "raise a right to relief above the speculative level . . . ."[24] In short, the Rule 8 notice-pleading standard is quite low.[25]

This case, however, concerns a claim of fraud. So it takes more than usual to state a viable claim at the motion to dismiss stage.

> We must interpret the requirements of Rule 9(b) in harmony with the principles of notice pleading. The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct. Thus, a plaintiff must specifically allege the circumstances constituting

---

[21] *Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 580, 66 S.W.3d 568, 577 (2002).

[22] *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[24] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[25] Fed. R. Civ. P. 8.

>fraud, including such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.[26]

To be clear, the circumstances of the material misrepresentation must be pled with particularity.[27] An allegation of fraud will only satisfy Rule 9(b)'s particularity requirement (and survive a 12(b)(6) motion to dismiss) if it "identif[ies the] who, what, where, when, and how" of the material misrepresentation.[28]

## I. Element One: False Representation of Material Fact

Everyone agrees that the first element of common-law fraud—false representation of material fact—needs to be pled with particularity pursuant to Rule 9(b). In this case, there are two alleged material misrepresentations. Each must be pled with particularity. SmartMatch pleads with particularity the "where," "when," and "how" of both misrepresentations. Less clear is whether SmartMatch pleads with particularity the "who" and the "what."

### A. The "Where," "When," and "How"

SmartMatch alleges that Mr. Hastings or his agent submitted Mr. Hastings's information and consent on the website https://medicare.healthinsurancelabs.com/medicare.[29] SmartMatch also alleges that Mr. Hastings made false statements to a third-party caller on the phone immediately before that caller transferred Mr. Hastings to SmartMatch.[30] This satisfies the "where" requirement. SmartMatch alleges that Mr. Hastings or his agent submitted Mr. Hastings's

---

[26] *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (internal quotations and citations omitted).

[27] Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

[28] *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003); *see also Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982) ("'Circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.").

[29] Def.'s Counterclaim (Doc. 5) ¶ 12.

[30] *Id.* ¶¶ 21–25.

information and consent (on the website) on December 3, 2019.[31] SmartMatch also alleges that the call at issue took place on March 27, 2021.[32] This satisfies the "when" requirement. SmartMatch alleges that Mr. Hastings or his agent entered Mr. Hastings's information and clicked the consent disclaimer on the website submission form.[33] SmartMatch also alleges that Mr. Hastings falsely implied on the phone call that he was Marvin Taeese, wanted health insurance quote calls, and was interested in talking to a health insurance agent.[34] This (marginally) satisfies the "how" requirement.[35]

### B. The "Who"

SmartMatch alleges that Mr. Hastings himself made the misrepresentation on the call.[36] That satisfies the "who" requirement for the alleged call-based misrepresentation. But the story is more complicated for the website submission. SmartMatch alleges that Mr. Hastings "or his agent" submitted the fraudulent information and consent on the third-party website.[37] This allegation fails Rule 9(b)'s particularity requirement. The Eighth Circuit has routinely held that claims of fraud must specifically identify the individual who made the fraudulent misrepresentation of fact.[38]

---

[31] *Id.* ¶ 12.

[32] *Id.* ¶ 21.

[33] *Id.* ¶¶ 13–15.

[34] *Id.* ¶¶ 22–25.

[35] *But see* footnotes 12 and 16.

[36] Def.'s Counterclaim (Doc. 5) ¶¶ 21–25.

[37] *Id.* ¶¶ 12, 14–15, 17.

[38] *See, e.g.*, *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (finding that vaguely attributing the "fraudulent representations and conduct to multiple defendants generally" does not satisfy Rule 9(b)); *Abels*, 259 F.3d at 915 (finding the allegations of fraud sufficient because the complaint "tells who spoke" the fraudulent misrepresentations).

information and consent (on the website) on December 3, 2019.[31] SmartMatch also alleges that the call at issue took place on March 27, 2021.[32] This satisfies the "when" requirement. SmartMatch alleges that Mr. Hastings or his agent entered Mr. Hastings's information and clicked the consent disclaimer on the website submission form.[33] SmartMatch also alleges that Mr. Hastings falsely implied on the phone call that he was Marvin Taeese, wanted health insurance quote calls, and was interested in talking to a health insurance agent.[34] This (marginally) satisfies the "how" requirement.[35]

### B. The "Who"

SmartMatch alleges that Mr. Hastings himself made the misrepresentation on the call.[36] That satisfies the "who" requirement for the alleged call-based misrepresentation. But the story is more complicated for the website submission. SmartMatch alleges that Mr. Hastings "or his agent" submitted the fraudulent information and consent on the third-party website.[37] This allegation fails Rule 9(b)'s particularity requirement. The Eighth Circuit has routinely held that claims of fraud must specifically identify the individual who made the fraudulent misrepresentation of fact.[38]

---

[31] *Id.* ¶ 12.

[32] *Id.* ¶ 21.

[33] *Id.* ¶¶ 13–15.

[34] *Id.* ¶¶ 22–25.

[35] *But see* footnotes 12 and 16.

[36] Def.'s Counterclaim (Doc. 5) ¶¶ 21–25.

[37] *Id.* ¶¶ 12, 14–15, 17.

[38] *See, e.g.*, *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (finding that vaguely attributing the "fraudulent representations and conduct to multiple defendants generally" does not satisfy Rule 9(b)); *Abels*, 259 F.3d at 915 (finding the allegations of fraud sufficient because the complaint "tells who spoke" the fraudulent misrepresentations).

Alleging that an unidentified "agent" made a fraudulent misrepresentation is insufficient.[39]

Of course, SmartMatch's Counterclaim does not confine its allegation of misrepresentation solely to the unidentified agent. Instead, SmartMatch alleges that either Mr. Hastings or an unidentified agent made the misrepresentation at issue. And it is true that, in *Bennett v. Berg*, the Eighth Circuit explained that fraud allegations against identified and unidentified defendants "may stand as to named defendants if, as to the named defendants, the paragraphs are otherwise specific in stating the time, place and content of the misrepresentations."[40] However, *Bennett*'s facts are distinct, and the distinction makes a difference.

In *Bennett*, the complaint clearly identified which statements the identified defendants allegedly made and which statements the unidentified defendants allegedly made.[41] *Bennett* did not address a complaint that left unclear whether an identified defendant or unidentified defendants made a single misrepresentation. In the case at bar, unlike in *Bennett*, the allegations leave one to guess whether the asserted misrepresentation—the entry and submission of information and consent on the website—was made (1) by Mr. Hastings, or (2) by some unidentified agent of Mr. Hastings. That ambiguity fails the particularity test.[42]

---

[39] *Cf. Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997) (dismissing a claim against "controlling shareholders" on Rule 9(b) grounds because "the Defendants [were] left to guess which controlling shareholders were responsible for this alleged fraud").

[40] 685 F.2d at 1062.

[41] *Id.* ("The complaints also fail to attribute certain false statements to identified defendants. Instead 'various other defendants' are alleged to be responsible for the statements.").

[42] Based on the Counterclaim, it appears that SmartMatch could remove the "or agent" language without running afoul of Rule 11's pleading requirements. Should SmartMatch learn during discovery that an agent of Mr. Hastings did, in fact, submit the fraudulent information to the third-party website, SmartMatch can amend its Counterclaim at that time pursuant to Rule 15(a)(2) if it so desires.

### C. The "What"

Rule 9(b) requires that the allegation of fraud specifically describe the content of a misrepresentation.[43] Mere "conclusory allegations that the defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."[44] If the accused is "left to guess" the details of the fraudulent misrepresentation, then the claim fails the particularity requirement.[45]

SmartMatch alleges that, via the website submission, Mr. Hastings or his agent "consented to receive prerecorded calls regarding health insurance quotes."[46] That is a fairly conclusory allegation. And it is certainly insufficient to satisfy the particularity requirements of Rule 9(b). SmartMatch must at least allege the specific language of the consent disclaimer associated with the electronic submission of personal information.[47]

The omission is not just a problem for the website-based misrepresentation allegation. It is also a problem for the alleged call-based misrepresentation allegation because that alleged call-based misrepresentation is intertwined with the website-submission information.

## II. The Remaining Elements

Eighth Circuit precedent is not crystal clear as to whether Rule 9(b)'s particularity requirement applies to the other four elements of common-law fraud.[48] In the case at bar, the Court

---

[43] *See United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006).

[44] *See Parnes*, 122 F.3d at 550 (brackets omitted) (quoting *Com. Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

[45] *Id.*

[46] Def.'s Counterclaim (Doc. 5) ¶ 15.

[47] *See Parnes*, 122 F.3d at 550 (dismissing the claim on Rule 9(b) grounds because the plaintiff failed to identify "the goods and services allegedly purchased and sold," "the amount of fraudulent profit allegedly obtained," and "the source for the gross amounts they allege"); *Bennett*, 685 F.2d at 1062 (holding insufficient the allegation of false statements located within "a 'pamphlet,' 'promotional material,' or 'a typical life-care contract'"). If SmartMatch amends its Counterclaim to fix this deficiency, SmartMatch should allege the specific language of the consent form as it appeared on the website on December 3, 2019—the date Mr. Hastings or his agent allegedly submitted Mr. Hastings's information.

[48] *Compare Costner*, 317 F.3d at 888, *with Abels*, 259 F.3d at 920.

need not delve deeply into that quagmire. Mr. Hastings's briefing attacks the four remaining elements of fraud on normal Rule 8 grounds, not heightened Rule 9 grounds.[49] Accordingly, the Court will evaluate SmartMatch's pleading of the remaining elements under the lower Rule 8 notice-pleading standard.

### A. Knowledge

SmartMatch alleges that Mr. Hastings or his agent knowingly submitted false information and consent to a third-party website, including suggesting "he was interested in health insurance quotes."[50] SmartMatch also alleges that Mr. Hastings knowingly misrepresented his name and interest in healthcare insurance quotes on the call.[51] Mr. Hastings does not argue against SmartMatch's allegations of knowledge.[52] These allegations are enough to satisfy Rule 8.

### B. Reliance

SmartMatch alleges that it relied on the information and consent submitted electronically by Mr. Hastings or his agent on the third-party website.[53] SmartMatch also alleges that it relied on the information Mr. Hastings provided on the phone call with the third-party caller—including continued interest in health insurance quotes.[54] Specifically, SmartMatch alleges as reliance the purchase of the lead and the subsequent phone conversation with Mr. Hastings.[55] This is adequate to survive a motion to dismiss.

---

[49] *See generally* Br. in Supp. of Pl.'s Mot. to Dismiss (Doc. 9).

[50] Def.'s Counterclaim (Doc. 5) ¶ 34.

[51] *Id.* ¶¶ 35–36.

[52] *See generally* Br. in Supp. of Pl.'s Mot. to Dismiss (Doc. 9).

[53] Def.'s Counterclaim (Doc. 5) ¶¶ 38–39.

[54] *Id.*

[55] *Id.*

**C. Intent**

Intent and "other conditions of a person's mind" need not be alleged with particularity.[56] Moreover, while specific intent is usually required for fraud, that's not always so. The Arkansas Supreme Court has made clear that "when a document is intended to be directed to others in addition to the immediate recipient, or where it is customary for the document to be relied upon by third parties, the doctrine of transferred intent will be applied to support a case of misrepresentation."[57] And the Eighth Circuit has acknowledged that "persons who fraudulently misrepresent the truth can be held liable to third parties if they have a 'reason to expect' their misrepresentation will be communicated to third parties."[58] If a reasonable person would conclude that his or her misrepresentation will reach a third party and influence that party's conduct, then the individual can be held liable to that third party.[59]

With respect to the website submission, SmartMatch alleges that Mr. Hastings "intended for [SmartMatch] to rely on the false information he [or his agent] submitted to induce [SmartMatch] to contact him regarding health insurance quotes."[60] This allegation is too conclusory on its own. Whether the intent element can be sufficiently pled in this case depends upon the language of the consent disclaimer to which Mr. Hastings or his agent agreed when submitting Mr. Hastings's information. If the language specifies that insurance coverage

---

[56] Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

[57] *Butler v. Comic*, 323 Ark. 725, 727, 918 S.W.2d 697, 698 (1996).

[58] *Brown v. La.-Pac. Corp.*, 820 F.3d 339, 345 (8th Cir. 2016) (quoting *Clark v. McDaniel*, 546 N.W.2d 590, 593 (Iowa 1996) (quoting Restatement (Second) of Torts § 533 (1977))). *Brown* was interpreting Iowa common-law fraud. There appears to be little substantive daylight between the Arkansas doctrine of transferred intent and the Second Restatement of Torts § 533, which underlies Iowa law. *See Fid. Mortg. Co. of Tex. v. Cook*, 307 Ark. 496, 502, 821 S.W.2d 39, 43 (1991) (quoting W. Page Keeton et al., Prosser and Keeton on Torts 744 (5th ed. 1984)).

[59] *Brown*, 820 F.3d at 345.

[60] Def.'s Counterclaim (Doc. 5) ¶ 37.

companies would receive the information submitted on the website, then the intent requirement is likely satisfied. Without alleging this specific language, however, there is nothing to sufficiently show intent. SmartMatch may be able to remedy this problem with additional information as to the contents of the consent agreement (i.e., the specific contents of the disclaimer on the third-party website at the time Mr. Hastings or his agent submitted Mr. Hastings's information).[61]

### D. Damages

For a claim of fraud to survive dismissal, it must allege facts that show that damages were incurred from the fraudulent misrepresentation.[62] Conclusory allegations are insufficient.[63] SmartMatch has alleged multiple different forms of damages from Mr. Hastings's alleged misrepresentations: (1) lost company revenue and profit from the purchase of the customer lead;[64] (2) the waste of the call agent's time when speaking with Mr. Hastings;[65] and (3) the resources required to defend against Mr. Hastings's TCPA lawsuit.[66]

With respect to the purchase of the customer lead, SmartMatch does not allege how much the lead cost. Nor does SmartMatch even allege the manner in which it pays for leads, or that an extra lead directly translates into more money spent. With respect to the SmartMatch agent's time spent on the call, SmartMatch does not allege in its Counterclaim how long the call lasted.[67] Nor

---

[61] With respect to the call-based misrepresentation, SmartMatch adequately alleges specific intent in paragraphs 21–25 and 38–39 of its Counterclaim. Nothing further is needed. In fact, Mr. Hastings represents, in his Complaint, that he "responded to the telemarketer in hopes of identifying the caller." Pl.'s Compl. (Doc. 1) ¶ 26. This alone is enough to plausibly suggest intent.

[62] *Tyson Foods*, 347 Ark. at 580, 66 S.W.3d at 577.

[63] *Mudlitz v. Mut. Serv. Ins. Cos.*, 75 F.3d 391, 395 (8th Cir. 1996) (stating that assertions that the party "justifiably and actually relied on the representations . . . and suffered damages . . . are purely conclusory" and insufficient for a finding of damages) (internal quotation marks omitted).

[64] Def.'s Counterclaim (Doc. 5) ¶ 41.

[65] *Id.* ¶ 42.

[66] *Id.* ¶ 43.

[67] Although Mr. Hastings asserts in his Motion to Dismiss that the call lasted three minutes, the Court cannot accept this fact as true since it was not included in the Counterclaim. *See* Br. in Supp. of Pl.'s Mot. to Dismiss (Doc. 9) at 8.

does SmartMatch explain how the agents are compensated or how they perform their work, leaving this Court to guess how the call caused any damage (let alone damage that is not *de minimis*).[68]

SmartMatch might be able to remedy the two foregoing deficiencies. But with respect to the cost of defending against Mr. Hastings's TCPA lawsuit, SmartMatch's problems run deeper. SmartMatch does not allege that it called Mr. Hastings or caused any other entity to call Mr. Hastings. Indeed, SmartMatch's allegations seem to suggest that Mr. Hastings was called by a third party that SmartMatch does not control. The take-home point here is that, according to SmartMatch, it did not place the call (or cause the call to be placed) that gave rise to the alleged TCPA violation. That means SmartMatch cannot claim the defense of a TCPA lawsuit as damages "suffered as a result of [its] reliance" on Mr. Hastings's alleged misrepresentations.[69]

## CONCLUSION

Plaintiff's Motion to Dismiss is GRANTED in part and DENIED in part. Pursuant to Rule 15, the Court gives SmartMatch leave to amend its Counterclaim within twenty-one days of the date of this Order.

IT IS SO ORDERED this 1st day of September 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[68] *De minimis non curat lex*—the law does not concern itself with trifles.

[69] *Tyson Foods*, 347 Ark. at 580, 66 S.W.3d at 577. In addition to this seemingly unfixable deficiency, there are deficiencies with the litigation-as-damages theory that might be fixable in the event it turns out that SmartMatch did in fact do or control the calling that gave rise to the alleged TCPA violation. For example, SmartMatch does not actually allege that it has paid its lawyers any money. Nor does SmartMatch allege it has paid for any other costs related to the litigation. For all the Court knows, SmartMatch has ongoing bulk retainer agreements with its lawyers that do not depend on billable hours or number of cases tried.